JAMES S. BARCUS, Appellant, *v.* WADE H. COOPER and Others, Respondents.

First Department, July 11, 1918.

Injunction — suit to compel corporation to continue employment of general manager — when temporary injunction will not issue — suit to restrain dissolution of corporation — injunction pendente lite granted — pleading — when no misjoinder of causes of action.

Where on the bankruptcy of a corporation the creditors and stockholders agreed to a reorganization of the company and further agreed that the plaintiff, who had been interested in the old corporation, should be general manager of the new corporation, a court of equity will not compel the reorganized corporation to continue the services of the plaintiff by preliminary injunction, if there is substantial evidence that he has failed to perform the duties of his position in good faith and with diligence and that the continuation of his services will be detrimental to the business of the corporation.

The above rule holds although, on the reorganization of the corporation, the creditors accepted bonds of the new company at par in lieu of their claims and certain of the stock of the new company was placed in trust subject to the terms of the reorganization agreement, on which stock the plaintiff had an equitable claim, for said facts did not make the plaintiff's contract of employment an essential part of the trust agreement.

But where there is proof that the defendants intend to dissolve the reorganized corporation although its business has been improving under the plaintiff's management and that the corporation has met all its obligations and will shortly be able to discharge its bonded indebtedness, in which case the plaintiff will come into the ownership of a profitable business, the court will restrain the dissolution of the corporation until a trial on the merits can be had, as otherwise the plaintiff might suffer irreparable damage.

A complaint which seeks to compel a corporation to retain an officer in its employment pursuant to its agreement and which also seeks to restrain the dissolution of the corporation is not demurrable on the ground of misjoinder of causes of action.

PAGE, J., dissented.

APPEAL by the plaintiff, James S. Barcus, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 26th day of March, 1918, denying plaintiff's motion for an injunction *pendente lite.*

*Lewis H. Freedman* of counsel [*Orville C. Sanborn* with him on the brief; *Joline, Larkin & Rathbone,* attorneys], for the appellant.

*William P. Chapman, Jr.,* of counsel [*Sackett, Chapman & Stevens,* attorneys], for the respondents.

SHEARN J.:

This is an appeal by the plaintiff, James S. Barcus, from an order of the New York Special Term denying the plaintiff's motion for an injunction *pendente lite* restraining the defendant Wade H. Cooper and the other individual defendants as directors of the corporate defendant, Bureau of National Literature, and said corporate defendant and International Trust Company, as trustee, from dissolving or reorganizing said corporate defendant, Bureau of National Literature, and from committing a breach of the trust agreement pursuant to which said corporate defendant was organized by discharging the plaintiff as president and general manager of said company, or otherwise impairing the plaintiff's rights under said trust agreement.

In or about 1900 plaintiff organized the Bureau of National Literature and Art, a corporation, referred to as the old company, which engaged in the business of publishing and selling, largely on the installment plan, a work known as "Messages and Papers of the Presidents." Plaintiff was the sole owner of the stock and conducted the company's business under his personal management until 1907, when he sold out and ceased all connection with the company. In 1909, the purchaser of the stock having been unable to comply with his contract of purchase, and the business being in bad shape, plaintiff and an associate each acquired one-half of the capital stock and plaintiff again became the president and general manager of the company. On resuming control, plaintiff found the affairs of the company hopelessly involved and the company heavily in debt, many of its creditors pressing for payment. On January 13, 1910, creditors filed a petition in bankruptcy against the company in the Supreme Court of the District of Columbia and a receiver was appointed. Plaintiff undertook to effect a reorganization and a plan of

reorganization was promulgated and thereafter executed by the plaintiff and the creditors, declared operative on October 29, 1910. Every creditor and stockholder assented to the reorganization agreement. According to plaintiff, many of the creditors conditioned their assent to the plan upon plaintiff's being made the general manager of any company which might take over the business of the old company and becoming a member of the board of directors of the new company and its president until the creditors' claims were either paid or the bonds to be issued under the plan were paid. Plaintiff does not allege that he was induced to become a party to the reorganization agreement in consideration of his becoming and remaining general manager but avers that he had always taken great pride in the business of the old company and felt it to be his duty to the creditors to see that their claims were paid and " therefore agreed to the plan of reorganization as desired by them." It is entirely clear, and is to be borne in mind throughout, that the primary purpose of the reorganization agreement and all that was provided to be done under it was to protect the creditors of the old company and secure the payment of their claims. By the reorganization agreement the creditors agreed to accept bonds of the new company, the defendant Bureau of National Literature, at par in lieu of their claims; the bookplates, copyrights and other assets of the old company were vested in the new company; the new company's capital stock was fixed at $100,000, which was constituted the sole equitable property of the plaintiff, subject only to the payment of the company's bonds, the stock being trusteed with the defendant International Trust Company, as trustee, subject to the terms of the reorganization agreement, and the trustee was required to and did issue to the plaintiff a certificate of equitable interest in said stock. The agreement further provided that the stock should be voted in accordance with the directions of the board of directors, except that it should be voted annually so as to elect the plaintiff as one of the directors, and except further that a majority of the owners of the bonds at any time outstanding might demand in writing that the voting power under said stock be controlled by the holders of the bonds.

First Department, July, 1918. [Vol. 184.

The agreement further provided: " It is agreed that the said James S. Barcus shall, during the continuance of this agreement, annually be elected by the Board of Directors as President and General Manager of the New Company *subject to the control of the Board of Directors,* and that he shall be paid for his services, his travelling expenses and a compensation equal to 3% of the gross business done by the New Company * * *. The said James S. Barcus agrees to give his entire time and attention as President and General Manager of the New Company during the continuance of this agreement for such compensation."

Article VIII of the reorganization agreement provided: " The Board of Directors of the New Company shall consist of seven persons, the members of the first Board to be chosen by the Committee.

" The Board shall have power, by and with the consent of 65% in interest of the holders of said bonds, to wind up said New Company and distribute its assets according to law, but subject to the provisions of this plan, whenever they deem it beneficial to the interests of the holders of the bonds that said New Company shall be wound up; and the stock held by the trustee as hereinbefore provided, shall be voted in favor of the proposition to dissolve and wind up the Company whenever said Board of Directors and said 65% in interest of said bondholders shall determine so to do; provided, however, that said mortgage shall not be foreclosed; nor shall said Company be so wound up during the first two years of its existence, nor shall it be wound up during any subsequent year if the net profits, ascertained as provided in Article VII, at the next preceding annual meeting, shall be 10% of the entire amount of bonds originally issued, then outstanding and unpaid."

The agreement further provided for a bond issue, secured by a first mortgage upon the bookplates and copyrights of the new company, sufficient in amount to cover all claims of creditors, interest payable semi-annually, principal due ten years from their date, except that one-half of the net profits of the new company should be set aside annually and paid upon account of the principal of the bonds.

The reorganization was perfected pursuant to the terms

of the agreement, and on December 16, 1910, a contract of employment of the plaintiff as general manager of the new company was duly entered into between the plaintiff and the new company for the period of ten years. Paragraph 1 of the contract provided:

" *First.* The party of the second part agrees to enter the service of the party of the first part as General Manager of the party of the first part, and as such General Manager to take charge of all the business of said party of the first part wherever the same may be conducted and carried on, and to continue to serve the said party of the first part in such capacity from and after the date hereof for a period of ten (10) years."

Paragraph 5 provided:

" *Fifth.* The party of the second part covenants and agrees that as such General Manager he will at all times conduct, carry on and direct the business of the party of the first part *upon the lines of policy approved by the Board of Directors* of the party of the first part, *and not otherwise.*"

Plaintiff was duly elected a director and president of the new company, and has been re-elected from year to year. He has continued to retain his interest in the stock of the company and is the owner of $34,000 par value of the bonds, out of $350,700.08 outstanding November 17, 1917, the original issue of $459,851.15 having been from time to time reduced by application of profits. All interest on the bonds, aggregating $140,412.97, has been paid without default. The individual defendants together with the plaintiff constitute the board of directors of the new company. The defendant Cooper has been a director since the organization of the new company. At the time of the reorganization he represented as attorney in fact certain creditors, the American National Bank of Wilmington, N. C., and the First National Bank of Dunn, N. C. Since the reorganization he has become president of the United States Savings Bank and the Union Savings Bank in the city of Washington, the former of which holds $62,000 par value of the bonds. Since the reorganization defendant Cooper has acquired bonds amounting to $103,072.48 (par value including balance due thereon). By virtue of his large financial interest and his active interest in

behalf of the other bondholders, the defendant Cooper has become the most influential member of the board of directors. The plaintiff's papers are replete with charges that in the matters hereinafter referred to the defendant Cooper was actuated by a purpose, characterized as fraudulent, to oust the plaintiff from his interest in the new company and to acquire same for himself. There is no showing of any fiduciary relationship between the plaintiff and Cooper, and there is no charge of any conspiracy between Cooper and the other defendants, or any charge whatever against the other defendants. The characterization of the motives of the defendant Cooper and the allegation of a selfish purpose on his part add nothing to the complaint and may be disregarded, for the only question is whether it is shown that the defendants have done any acts that they were not legally entitled to do.

The complaint alleges that the business of the new company prospered under plaintiff's management and that its net profits have been more than ten per cent of the outstanding bonds and that if its business continues to be conducted according to his policies and pursuant to his management as provided in the reorganization agreement the bondholders will be paid in full at the maturity of the bonds in 1920 and there will remain assets of large value representing the stock of the company and which will be thereupon freed from the trust and will become the property of the plaintiff.

It appears that in 1916 the defendant Cooper became very much dissatisfied with the conduct of the business under plaintiff's management and apparently apprehensive concerning the financial condition of the company and its ability to continue to discharge its obligations to the bondholders and he addressed a letter to some of the larger holders of bonds, giving his views of the status of affairs and suggesting a reorganization. This led to a vigorous dispute between the plaintiff and the other officers of the company concerning its financial condition. Plaintiff claimed that the books showed a gain for the year 1915-16 of $39,009.46. Cooper maintained that if proper deductions were made for losses and for deductions for doubtful accounts, instead of a profit there was a loss of $10,888.03, which would constitute a default and not only warrant foreclosure but would authorize

a dissolution of the company upon the request of sixty-five per cent of the bondholders. Cooper took the position that the plaintiff had habitually absented himself from the company's office, had utterly neglected its business and turned it over to subordinates, had given up his time to private ventures, all in violation of his contract of employment, and that in view of the increasing cost of publication, growing out of war conditions, and as the company was facing the payment of a very heavy income tax, the situation was not one that should be permitted to continue, and that the interests of the bondholders required that the plaintiff, who was drawing over $15,000 a year for alleged services, should be gotten rid of. Under date of August 6, 1917, the defendant Cooper prepared and sent to the bondholders a letter stating that he represented more than fifty per cent of the entire bonded indebtedness and that a reorganization was necessary, and claimed that a default had taken place in that the company did not earn a net profit of ten per cent for the fiscal year 1916 on the amount of bonds outstanding. In this letter he stated, among other things:

" There are two or three methods of handling the situation: *firstly*, by the bondholders themselves resolving to liquidate the present company, which means that it would be advertised and sold in an entirety as provided in the mortgage; *secondly*, by twenty-five per cent of the bondholders calling upon the International Trust Company, Trustee of Boston, to advertise and sell the whole company in an entirety, as provided in the mortgage; *thirdly*, by the Board of Directors simply electing someone President to succeed Mr. Barcus."

" As I see the situation, we are paying Mr. Barcus to prevent us from collecting our money, but if by chance we collect it, then we must give him the stock for the fortunate accident of collecting it.   *   *   *

" It will therefore be observed that the only way to get rid of this burdensome and cumbersome agreement which pays Mr. Barcus a great big salary, regardless of the bondholders, is to foreclose and sell the property as provided in the mortgage."

Cooper gave notice that he intended to have action taken at the regular meeting of the board of directors on September

First Department, July, 1918.                [Vol. 184.

29, 1917. Alleging that Cooper had obtained duly executed powers of attorney from bondholders so that he controlled sixty-five per cent or more of the bonds of the company outstanding, and that he threatened and intended to have the directors of the company, with the consent of sixty-five per cent in interest of the bondholders, vote to wind up the company and cause a sale of its assets to be had and threatened to cause the plaintiff to be discharged as general manager of the company and to have the stock of the company voted by the International Trust Company as trustee in favor of a resolution dissolving the company and in favor of electing directors other than the plaintiff so that plaintiff should no longer be elected president of the company, plaintiff instituted this action, and on September 28, 1917, obtained a temporary injunction restraining any such action at the said monthly meeting or at any adjournment thereof with an order to show cause why the injunction should not be continued *pendente lite.* Issue was duly joined and the motion was heard upon the pleadings and voluminous affidavits, which with the exhibits, comprise nearly 1,000 printed pages. The motion was denied partly on the ground that " the affidavits are so conflicting that the affiants should be subjected to the test of cross-examination in order to determine the true facts of the case," and partly because of lack of authority to enjoin " an employer from discharging an employee who neglects his business."

The conflict of affidavits centers upon two issues: (1) Whether the earnings of the company show that it is in default under the reorganization agreement and (2) whether the plaintiff had breached his employment contract. It would serve no purpose to attempt to analyze and sift here the voluminous evidence presented by the contending parties.

As to the breach of the employment contract, it will suffice to say that the case falls within the well-settled rule that a court of equity will not by preliminary injunction compel an employer to continue the services of an employee where there is substantial evidence to the effect that the employee has failed to perform the duties of his position in good faith and with diligence and that the continuation of his services is detrimental to the business of the employer. (*Bronk* v. *Riley,*

50 Hun, 489; *Miller* v. *Warner*, 42 App. Div. 208; *Shubert* v. *Woodward*, 167 Fed. Rep. 47; 22 Cyc. 856.) The plaintiff recognizes the rule but contends that the contract of employment was pursuant to the agreement of reorganization and instead of being primarily a contract of employment is an essential part of an alleged trust agreement between the parties, and is founded upon a property right of the plaintiff in the subject-matter of the trust and the case falls within *Jones* v. *Williams* (139 Mo. 1; 37 L. R. A. 682). I can see no element of trust to take the case out of the ordinary rule. No property of the plaintiff is held by the defendant directors in trust. The old company was bankrupt and its property, which was insufficient to pay its debts, belonged equitably to its creditors. The primary object of the reorganization agreement and the formation of the new company was to protect the creditors and pay them in full. The mere fact that in the event of the payment of the bonds the plaintiff would own the stock free and clear in no sense constitutes the bondholders trustees of the plaintiff. The only fiduciary relation existing is the ordinary relation of directors to stockholders and creditors. But this is not the trust relation which plaintiff claims here exists or to be violated. He rests upon the reorganization agreement, which was barren of any trust obligation to the plaintiff as a possible, ultimate owner of the capital stock of the reorganized company. The case of *Jones* v. *Williams* (*supra*) is essentially different. There the plaintiff purchased 1,667 shares of stock in the corporation, for which he paid $80,000, and in consideration thereof was given the control and management for five years at a salary of $10,000 a year. The court held that the control of the newspaper was a property right in the nature of a lease which the plaintiff had the right to enjoy for five years and that its value to him depended upon the success with which it was managed. Holding that the plaintiff's position gave him a property right in the control and management of the property, the court naturally concluded that the contract was not one for mere personal services and that to deprive him of that right unjustifiably warranted the interposition of a court of equity because the injury could not be compensated for in damages. Here we are not dealing

with any such situation. The plaintiff invested no money for a proprietary interest in the corporation contingent upon its control being vested in him to be maintained according to his own views or for his own purposes. He was connected with a bankrupt company and felt a duty to its creditors which prompted him to attempt its reorganization. He merely acceded to the wishes of creditors that he should become its general manager, one of its directors, and its president. The reorganization agreement itself provided that his management should be " subject to the control of the Board of Directors." His contract of employment provided that he should carry on the business " upon the lines of policy approved by the Board of Directors, * * * and not otherwise." There is no parallel between the cases in fact or in principle. Under such a contract and under the circumstances of this case, it would be an unwarranted exercise of the equity powers of the court to require, by a preliminary mandatory injunction, the directors of a corporation to continue in the general management of the corporation a man in whom they had lost confidence and who, in their best judgment, is a detriment and menace to the solvency and prosperity of the corporation.

As to the threatened dissolution of the corporation, the situation is quite different. If it is true, as claimed by the plaintiff and supported by affidavits and the analysis of accountants, the company's business has been constantly improving under his management, that it has met all of its obligations and will within approximately two years be able to discharge its bonded indebtedness, satisfying all of the creditors of the old company, and that then the plaintiff will come into the full ownership of an extremely profitable business, and further considering the fact that the plaintiff created the original business in 1900 and has been identified with it for more than fifteen years, it would work a grave injustice to the plaintiff to permit the company to be now dissolved and its assets sold unnecessarily and, presumably, at a sacrifice. If there has been a default, entitling the trustee to foreclose the mortgage according to its terms, of course the court will not interfere by injunction with the institution or maintenance of a foreclosure action. Aside

from other adequate reasons, all parties concerned would obtain adequate protection in such an action, for if there were no default there could be no foreclosure. But the defendants are not, so far as appears, proceeding to foreclose. They are acting under the clause in the reorganization agreement which authorizes the board of directors to dissolve the company on the request of sixty-five per cent in interest of the holders of bonds issued and outstanding, and the right so to do is dependent upon whether in any year subsequent to two years after reorganization the net profits " after deducting from its earnings all losses, expenses, taxes and interest, including interest upon said bonds for such year," " at the next preceding annual meeting shall be ten per cent of the entire amount of bonds originally issued, then outstanding and unpaid." The defendants strongly contend that their evidence shows that this condition exists and that they are, therefore, entitled to dissolve the company. The matter turns largely upon the propriety of a depreciation, deduction or allowance upon outstanding installment contracts and involves expert examination of the books and expert opinion upon this particular kind of business. Where the issue is so sharp and there is such a conflict of evidence, it is very unsatisfactory to dispose of the matter upon affidavits. There is no reason to apprehend any serious consequences from a continuation of the business for the comparatively short time intervening until there is a trial on the merits, especially if the company is to be relieved from paying plaintiff's salary. In view of these facts, and having in mind the injustice and perhaps irreparable damage that would be sustained by the plaintiff if the company were now wrongfully dissolved, and the right to dissolve being in doubt, the wisest and safest course to pursue will be to preserve the *status quo*, with respect to the dissolution, until a trial on the merits can be had, provided such a trial is expedited by the plaintiff.

The contention that the complaint is demurrable because of misjoinder of causes of action is not well founded. The action is intended to be based upon the reorganization agreement and seeks all the relief that plaintiff claims to be entitled to as incidental to that agreement and its threatened breach.

It follows that the order should be reversed, with ten

dollars costs and disbursements, and the motion granted for an injunction *pendente lite* restraining the defendants from taking any steps to dissolve the Bureau of National Literature pursuant to any request of the holders of sixty-five per cent of the outstanding bonds as provided for in the agreement of reorganization.

DOWLING, SMITH and MERRELL, JJ., concurred; PAGE, J., dissented.

Order reversed, with ten dollars costs and disbursements, and motion for injunction granted as stated in opinion. Order to be settled on notice.