I am, therefore, of opinion that the learned justice at Special Term was right and the order should be affirmed.

Order reversed, writ dismissed and relator remanded to custody. Order to be settled on notice.

---

HAZLITT A. CUPPY, Appellant, *v.* ARTEMAS WARD and Others, Respondents.

First Department, May 5, 1919.

Corporations — contract to purchase foreign corporation and divide profits construed — suit in equity by party to said contract against other party thereto, the corporation, and its directors to compel plaintiff's reinstatement as manager — adequate remedy at law — injunction — jurisdiction to control discretion of board of directors of foreign corporation.

Plaintiff, a resident of Pennsylvania, and the defendant W., residing in this State, entered into a contract for the purchase of all the issued shares of stock of an existing Pennsylvania corporation operating a factory in said State, providing, among other things, that the net earnings of the corporation should be distributed in certain proportions and that the plaintiff should be employed as general manager with a certain salary. After the plaintiff was ousted from his position the general office of the company was removed to the city of New York and it is now engaged in business in this State. In a suit in equity by the plaintiff against W. and also said corporation and its officers and directors, to obtain an injunction restraining the defendants from violating plaintiff's contract and from excluding him from the management of the business,

*Held*, that the plaintiff is not entitled to any equitable relief;

That if he was wrongfully discharged and the contract was binding upon the corporation or W., he has an adequate remedy at law;

That it is not competent for a court of this State to compel said foreign corporation or its board of directors through any authority or control that said W. may have as owner of the majority of the capital stock, to reinstate and continue the plaintiff as manager.

Injunction is not an appropriate remedy to procure relief for past injuries or to restore parties to rights of which they have already been deprived.

Courts of equity of one jurisdiction will not assume jurisdiction of a cause involving the internal affairs and management of a corporation regulated by the statutory law and public policy of a foreign country or a sister State. Such issues will be relegated to the local jurisdiction. This rule precludes the exercise of jurisdiction to control the judgment and discretion of the board of directors of such a corporation with respect to the appointment, removal or reinstatement of its officers or agents.

SHEARN and MERRELL, JJ., dissented, with opinion.

APPEAL by the plaintiff, Hazlitt A. Cuppy, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 27th day of September, 1918, sustaining demurrers to the complaint interposed by each defendant separately, and directing judgment dismissing the complaint, and also an appeal is taken from the judgment entered in said clerk's office on the 3d day of October, 1918, pursuant to said order.

*Frank R. Savidge* of counsel [*Frederick M. Thompson* with him on the brief], for the appellant.

*Edward W. Hatch* of counsel [*Everett, Clarke & Benedict,* attorneys], for the respondents.

PAGE, J.:

This is a suit in equity wherein the plaintiff has joined the defendant Ward, with whom he has a contract, the Ideal Cocoa and Chocolate Company, a Pennsylvania corporation, and the directors of said corporation, to obtain the following relief: 1. An injunction restraining Ward and all other defendants from doing any act in violation of the contract with Ward, and particularly from excluding, or doing any act tending to exclude, the plaintiff from the management of the business and factory of the corporation, and directing Ward to exercise his stock control of said company to restore the plaintiff to the position and salary of manager of the factory of said company, and to keep said position and cause said salary to be paid to the plaintiff until the expiration of the time fixed in said contract. 2. That a mandatory injunction issue directing Ward to transfer or cause to be transferred to plaintiff, without cost to the plaintiff, a sufficient

number of shares of stock of the corporation now held by Ward, or by his agents, so that the plaintiff shall have forty-nine per cent of the total issued stock of said corporation, or, in the alternative, directing Ward, at his own cost and expense, to cause to be issued to the plaintiff 157 shares of the stock of said company now authorized but not issued, so that plaintiff shall thereby have forty-nine per cent of the total stock of the said company. 3. Restraining Ward and the other defendants from transferring to any person other than plaintiff any stock now held by them over and above the number of shares necessary to give the plaintiff forty-nine per cent of the total issued capital stock of the company as the same shall be at the time of said transfer. 4. That a receiver be appointed *pendente lite* to take and hold the stock of the corporation, and be directed to call a meeting of the stockholders and take such action at said meeting as shall be necessary to restore to the plaintiff the management of said business or so much thereof as the court shall determine the plaintiff entitled to under the said contract, and to cause the salary to be paid pending the action. 5. For general relief.

I cannot find a sufficient statement of facts to constitute a cause of action for this specific relief demanded nor for any other equitable relief. It cannot be seriously contended that the Supreme Court of New York State would have power to appoint a receiver for stockholders of a Pennsylvania corporation who should be empowered to call meetings of stockholders and directors, and direct the action to be taken at such meetings. This proposition is too absurd to require discussion. Nor can the plaintiff compel Ward to transfer or cause to be transferred to him a sufficient number of shares of stock in the corporation so that the plaintiff shall have forty-nine per cent of the total issued stock, for there is no provision in the contract that the plaintiff should ever be entitled to receive from Ward stock sufficient to make his holdings therein forty-nine per cent of the total issued stock. Under the contract, Ward was entitled to fifty-one per cent of the authorized stock, and the plaintiff was entitled to the remainder of the stock purchased by the parties. When the $300,000 contributed by Ward to purchase the stock should have been repaid with interest, and the amount contributed by plaintiff

had likewise been repaid in the manner specified in said contract, then Ward was to transfer out of his holdings two per cent of the issued stock. The complaint states that this money has not been repaid. Hence the plaintiff is not entitled to receive even the two per cent of stock. In this alternative, the plaintiff asks that the court direct Ward to purchase at his own expense the 157 shares of unissued stock and present it to the plaintiff. For such a gift there is not the slightest foundation in the contract or in the complaint. The complaint alleges that the plaintiff has been excluded from the management of the business and factory of the corporation. An injunction restraining the commission of acts already committed would be futile. A preventive injunction necessarily operates upon an unperformed and unexecuted act, and prevents a threatened but non-existing injury. It is, therefore, not an appropriate remedy to procure relief for past injuries, or to restore parties to rights of which they have already been deprived. (See KENT, Ch., in *Watson* v. *Hunter,* 5 Johns. Ch. 169.) In my opinion the plaintiff is not entitled to a mandatory injunction restoring him to the position of manager of the factory of the said corporation and to keep him in that position and cause the salary to be paid to him until the expiration of the time fixed by the contract. It is stated in the complaint that charges were preferred against the plaintiff of dishonesty and inefficiency, that a committee of the directors was appointed to investigate these charges and at another meeting of the directors the committee presented a report charging him with dishonesty and unfaithfulness, and thereupon the directors adopted a resolution discharging the plaintiff from the employ of the corporation. To be sure it is alleged that these charges were false and untrue, and that the action was taken at the instigation of Ward. This, however, does not give the court jurisdiction to try out the alleged cause for the discharge of the plaintiff, and reinstate him in his position, if we should decide that he had been wrongfully discharged. If he held a contract binding on the corporation to employ him for a definite time at a fixed compensation, and he was wrongfully discharged, he has a full and adequate remedy at law for damages. If his contract was not binding on the corporation, but Ward

personally was obligated to him to so far as he was able to keep him in that position for a definite time at a fixed compensation, and Ward caused his discharge by making or instigating others to make false and untrue charges which caused him to lose his position, he also has a full and adequate remedy at law against Ward for damages. As I understand Mr. Justice SHEARN's opinion, he does not controvert this proposition, but he says that this corporation is but an incorporated partnership, and that where two individuals own all the issued stock of a corporation,. a court of equity will disregard the legal fiction that a corporation is a separate entity, where justice requires. This is undoubtedly the .fact when copartners incorporate their business, or where two persons enter into an agreement to form a corporation to carry on a business under certain stipulated engagements, one to the other, in the conduct of a business, and also in some cases where the promoters of a corporation have been held to have bound the corporation by their engagements. But in the case under consideration, the Ideal Cocoa and Chocolate Company was a corporation organized and existing under and by virtue of the laws of the State of Pennsylvania, engaged in the business of making chocolate products in that State for some time prior to this agreement between plaintiff and Ward. It was a distinct corporate entity. They entered into an agreement for the purchase of its stock and acquired all the issued shares, and agreed that the net earnings of the company should be distributed in the form of cash dividends and as between the parties should be distributed as follows: Twenty per cent to the stockholders as dividends; eighty per cent to Ward, until the amount he had advanced ($300,000) with interest at five per cent should be repaid him and then to plaintiff until the amount he had advanced with interest at six per cent should be repaid to him. I cannot see how this provision changes an existing corporate entity into an incorporated copartnership. Nor is this the case where a man is seeking to take advantage of corporate forms to perpetrate a fraud. The contract provided that the net earnings were to be divided as above set forth. The complaint states that while the plaintiff was in control of the business, a period of seven years, the company earned about 300 per cent, but no dividends were declared. This money was

used to increase the working capital and acquire additional assets. It is not alleged that this was done with Ward's consent. As plaintiff had received bonds of the corporation to the extent of $100,000 for the purchase of the stock and assets of a corporation owned by him, and was in receipt of an annual salary of $10,000, it can be readily seen that it was to his advantage to build up the security for his bonds and extend the time within which he could continue to draw the salary; but what of Ward, $300,000 invested and not one cent of return for seven years, either of principal or interest? There was one way open to him; he had the stock control of the corporation, and the contract secured this to him for the entire period of the contract. He had the power to elect directors who would not be under the control of the plaintiff. The directors are the only persons who can appropriate the earnings of the corporation either to the payment of dividends or to extension of plant. This he did. It may be a source of regret to the plaintiff that he did not perform the terms of the agreement on his part, and while he was in control of the corporation distribute the dividends in the manner therein provided, when as he now states Ward would have been repaid a large part of his investment, and the plaintiff would be nearer to the realization on his investment and the increase of his stock holdings. But in this situation I can discover no reasonable grounds for the granting of a mandatory injunction taking the control of this corporation from the directors elected by the majority stockholders and vesting it in the sole and exclusive management of a minority stockholder. I have not discussed this case from the viewpoint that it was a foreign corporation, as I concur in the opinion of Mr. Justice LAUGHLIN in which that phase of the case is discussed.

In my opinion the judgment and orders should be affirmed, with costs.

CLARKE, P. J., and LAUGHLIN, J., concurred; SHEARN and MERRELL, JJ., dissented.

LAUGHLIN, J.:

This is a suit in equity and I am of opinion that the plaintiff fails to show that he is entitled to any equity relief which it

is competent for the courts of this State to grant and that, therefore, the demurrers interposed by all of the defendants separately on the ground that the complaint does not state facts sufficient to constitute a cause of action are well taken.

The equitable relief demanded necessarily involves the direction and control of the management of the defendant, the Ideal Cocoa and Chocolate Company, which is a foreign corporation organized and existing under the laws of Pennsylvania. The individual defendants other than Ward are directors of and constitute the board of directors of the corporation. One of them is its president, another its treasurer, and another its general manager. It is the business of the corporation to manufacture and sell chocolate and its factory is in Pennsylvania. It is alleged that the plaintiff resides in Pennsylvania and that the defendant Ward resides in this State. After the contract with the plaintiff, the substance of which is stated in the opinion of Mr. Justice SHEARN, was made and after the plaintiff was ousted as general manager of the company, its general office was removed to the city of New York and it is now engaged in business in this State and has an office for the regular transaction of business in the city of New York. It was conceded on the argument that under the law of Pennsylvania the directors are not required to be stockholders. It is not alleged that any of the directors or officers are residents of this State. The only relief to which the plaintiff claims to be entitled now is to have the officers and directors of the corporation and the corporation itself enjoined from permitting him to act as general manager of the company pursuant to his private contract with the defendant Ward, which it is not alleged was made by authority of the company or of its board of directors or ratified by either, and to have him reinstated as general manager of the company. In all the decisions cited by Mr. Justice SHEARN and relied upon by the plaintiff, the courts were adjudicating with respect to the rights of stockholders of domestic corporations. In my opinion it is not competent for a court of this State to compel this foreign corporation or its board of directors, directly or indirectly, through any authority or control that the defendant Ward may have as owner of the majority of the capital stock, to reinstate and continue the plaintiff as manager of the

First Department, May, 1919.          [Vol. 187.

corporation.   Without regard to the concession, which is not part of the record, with respect to the law of Pennsylvania to the effect that directors need not be stockholders, it must be assumed from the allegations of the complaint that the individual defendants other than Ward are the lawful directors of the company.   It is their duty both to the stockholders and to the creditors of the company to exercise their best judgment in the management of the affairs of the company including the appointment of the general manager; and for the due performance of their duties it must be assumed that they are answerable under the laws of Pennsylvania, which, with respect thereto, are to be construed and applied by the courts of that jurisdiction.

It is a well-settled general rule of equity jurisprudence that the courts of equity of one jurisdiction will not assume jurisdiction of a cause involving the internal affairs and management of a corporation regulated by the statutory law and public policy of a foreign country or a sister State and that such issues will be relegated to the local jurisdiction of the incorporation.   (*Hallenborg* v. *Greene,* 66 App. Div. 590; *Butler* v. *Standard Milk Flour Co.,* 146 id. 735; *People ex rel. Ruman* v. *National Slavonic Society,* 144 id. 574; *Gregory* v. *N. Y., L. E. & W. R. R. Co.,* 40 N. J. Eq. 38; *Guilford* v. *Western Union Telegraph Co.,* 59 Minn. 332; *Edwards* v. *Schillinger,* 245 Ill. 231; *Wason* v. *Buzzell,* 181 Mass. 338; *Clark* v. *Mutual Res. Fund L. Assn.,* 14 App. Cas. [D. C.] 154; 43 L. R. A. 390. See, also, note 12 R. C. L. § 21, p. 31.)   This rule precludes the exercise of jurisdiction to determine the validity of the incorporation of a foreign company, or to dissolve it, or to appoint a general receiver for it, or to control the election of its officers, or to determine the validity of their election, or to remove or reinstate them; and necessarily, I think, precludes the exercise of jurisdiction to control the judgment and discretion of the board of directors of such a corporation with respect to the appointment, removal or reinstatement of the officers or agents of the corporation.

It is, however, consistent with this rule for the courts of another jurisdiction to enjoin a fraudulent conspiracy to dissipate the property of a foreign corporation and to call the directors and officers to account for misconduct or negli-

gence, for this is in aid of the corporation and its creditors; and the rule does not preclude enjoining an illegal issue of stock by a board of directors acting within the jurisdiction where the injunction is sought, provided the illegality of the issue of stock depending on the foreign law is clear, or enjoining the depository of stock where the injunction is sought from voting it under a voting trust agreement which has expired (*Miller* v. *Quincy,* 179 N. Y. 294; *Jacobs* v. *Mexican Sugar Refining Co., Ltd.,* 104 App. Div. 242; *Acken* v. *Coughlin,* 103 id. 1; *Weber* v. *Wallerstein, No. 1,* 111 id. 693; *Hallenborg* v. *Greene, supra; Kraft* v. *Griffon Co.,* 82 App. Div. 29; *Butler* v. *Standard Milk Flour Co., supra*); or compelling the transfer of stock on the books of the corporation where it has a transfer office and agency in the jurisdiction to which the application is made. (*Travis* v. *Knox Terpezone Co.,* 215 N. Y. 259.)

I am of opinion that the plaintiff should be left to his remedy by application to a court of Pennsylvania, where the company was incorporated and its plant is located, and I, therefore, vote for affirmance.

SHEARN, J. (dissenting):

A general demurrer to a bill in equity " ' must be founded upon the absolute, certain and clear proposition that, taking the charges in the bill to be true, the bill would be dismissed at the hearing.' " (*Standard Fashion Co.* v. *Siegel-Cooper Co.,* 157 N. Y. 60.) The essential facts admitted by this demurrer are these:

On March 8, 1911, the plaintiff and the defendant Ward entered into a written agreement at the city of New York for the purpose of the acquisition by them of the entire capital stock of the defendant Ideal Cocoa and Chocolate Company, a foreign corporation, engaged in the cocoa and chocolate business, having a factory in the State of Pennsylvania, and now engaged in business in the State of New York, with an office for the regular transaction of business in the city of New York. The agreement provided, among other things, that Ward should advance $325,000 and plaintiff $25,000 for the purchase of said stock in accordance with the terms of an option agreement held by the plaintiff, said sums to be deposited with a trust company which was authorized to pay to the

stockholders of the Ideal Company, holding stock to an amount not less than fifty-one per centum of the authorized capital, consisting of 3,000 shares, of which 2,843 shares had been issued and were outstanding, the sum of $115 per share. Upon such purchase, fifty-one per centum of the total authorized capital stock of the Ideal Company was to be transferred to Ward, or his nominees, and the balance of the stock purchased was to be issued in the name of the plaintiff, indorsed by him in blank and delivered to Ward, to be held as security until Ward's contribution of $325,000 should be returned to him, with interest at five per cent. The earnings of the company were to be distributed annually in the form of cash dividends, twenty per cent of which was to be paid to Ward and the plaintiff in proportion to their holdings of stock, the remaining eighty per cent to be paid to Ward until his investment and interest were fully repaid, thereafter to the plaintiff until his investment of $25,000 and interest at six per cent should be repaid. Thereupon Ward agreed to transfer out of his own holdings to the plaintiff two per centum of the " authorized " capital stock of the Ideal Company and thenceforth annual dividends were to be divided between the parties in proportion to their respective holdings. The agreement further provided that upon the acquisition of the said shares of the Ideal Company by Ward and the plaintiff, the Ideal Company should acquire the assets and good will of the Puritan Pure Food Company, a corporation organized under the laws of the State of New York, the entire capital stock of which was owned or controlled by the plaintiff, by the exchange of bonds of the Ideal Company for the stock of the Puritan Company. The agreement further provided:

" *Seventh.* It is hereby agreed that the party of the second part [plaintiff] shall devote himself exclusively to the business of the Ideal Company, and that in consideration thereof he shall receive from said Company a salary of Ten thousand dollars ($10,000.00) per annum, to continue until the transfer of the two per centum of the authorized capital stock of the Ideal Company by the party of the first part to the party of the second part is fully completed, as provided in Article Fifth hereof.

" *Eighth.* It is agreed that the party of the second part

shall have the management of the factory, and shall fix the limit of the appropriation for advertising purposes annually, but that the party of the first part shall be given the exclusive control of all advertising of the products of the Ideal Company and shall superintend the expenditure of all moneys appropriated for that purpose."

Pursuant to the agreement, Ward advanced $300,000 (instead of $325,000) and plaintiff advanced $42,800 (instead of $25,000), and, with the money so advanced, they acquired 2,843 shares of the Ideal Company's stock. Of the stock so acquired, 1,530 shares, or 51 per cent of the total *authorized* stock, were issued to Ward and the balance of the shares *purchased,* 1,313 shares, were issued to the plaintiff. Thereupon the plaintiff undertook the management of the Ideal Company " as provided in said agreement, and has continued for over seven years to manage the same, but with the advice, consent and full knowledge of the said Ward." During the period while the plaintiff was managing the company, its business increased about 300 per cent. The company has a surplus exceeding $350,000, over $300,000 of which was accumulated during the period of plaintiff's management. No dividends have been declared, the earnings having been used to increase the working capital and acquire additional assets. The company is thoroughly solvent and is now in a position to begin the payment of dividends, if it should be decided that it would be more advisable to do so than to employ the profits in extending the business. In April, 1918, plaintiff still being the manager of the business, and president of the company, Ward undertook to exclude the plaintiff from the management of the company and to deprive the plaintiff of his agreed salary in order " to have the advantage for himself of the control of the administration of the business," and on May 28, 1918, Ward " caused a meeting of the stockholders of the said Ideal Company to be held, and the defendants Charles E. Atkinson, William B. Nesbit and George M. Clarke elected directors, together with William H. Muth and the plaintiff." On June 5, 1918, Ward " caused the board of directors to meet and caused them to elect the defendant Charles E. Atkinson as president in place of the plaintiff, the defendant Cornelius M. Ford as treasurer, and the defendant William H. Muth

as general manager of said company in place of the plaintiff." Ward " then caused the officers and directors of the company to appoint the plaintiff factory manager, but limited him to such duties as might be assigned to the plaintiff by the president of the company." Thereafter the officers and directors of the company " neglected and refused to assign any duties to the plaintiff and refused to allow him to take any part in the management of the company or of said factory and instructed other employees of the company to disregard the directions given by the plaintiff." Ward also " caused the directors of the company to adopt on or about June 25, 1918, resolutions designed to and for the purpose of limiting the authority of the plaintiff as factory manager, and preventing him from performing any of the duties connected with such a position." Ward also " caused said board of directors to vote salaries to the officers of the company as follows: President, $5,000 per annum; vice-president, $4,000 per annum; treasurer, $4,000 per annum; secretary, $4,000 per annum, making a total of $17,000 per annum for salaries to officers, whereas prior to said date all of the duties directed to be performed by said officers had been in fact performed by the plaintiff and clerks in the regular employ of the company and an officer at a salary of $200 per annum, and without any cost to the company other than the plaintiff's own salary of $10,000 a year and the salaries paid to the said clerks and officer." Thereafter Ward " caused the board of directors of the company to adopt preambles and resolutions and to spread the same upon the minutes of the company, making various charges against the plaintiff of dishonesty and inefficiency, all of which are wholly false and untrue, and appointing a committee to investigate said alleged charges." On July 2, 1918, Ward " caused a further meeting of said board of directors to be held, and at said meeting caused said committee to present a report charging the plaintiff with various acts of dishonesty and unfaithfulness, all of which are wholly false and untrue." At said meeting Ward " caused said board of directors to adopt a resolution discharging the plaintiff from the employ of said Ideal Cocoa & Chocolate Company as factory manager; " and " Ward has since said time caused and still causes said board of directors and said officers of said company to refuse

to allow the plaintiff to perform the duties of said factory manager, and to refuse to pay the plaintiff his said salary of $10,000 per annum."

The directors and officers " are wholly inexperienced and unskilled in the business of manufacturing chocolate, which said business requires technical knowledge which can only be acquired through long experience." These officers and directors " have already made numerous and costly errors in their management of said business " and have " added to the expense of operating said company, through unnecessary salaries to officers and increase of salaries to other employees, a sum equal to six per cent per annum upon the total authorized capital stock of the company." On the other hand, if the plaintiff should continue to manage the business as heretofore, he would be enabled in a very short time to bring about the repayment of the whole of the said investment of the said Ward, thus making it possible to repay the plaintiff's own investment, to receive the full dividends upon his own stock when earned and to have transferred to him two per centum of Ward's holdings, as provided in the contract.

Alleging that he has no adequate remedy at law, plaintiff prays, among other things, for the following relief:

" I. That an injunction issue out of this Court restraining the said Ward and all other defendants from doing any act in violation of said contract of March 8, 1911, between said Ward and the plaintiff, and particularly from excluding or doing any act tending to exclude the plaintiff from the management of the business and factory of the Ideal Cocoa & Chocolate Company, and directing the said Ward to exercise his stock control of the said company so as to restore the plaintiff to the position and salary of manager of the factory of said company and to keep said position and cause said salary to be paid to the plaintiff until the expiration of the time fixed in said contract."

Upon this state of facts, which must be assumed to be true, this court is about to decide that it is an " absolute, certain and clear proposition " that the bill would be dismissed at the hearing. From this conclusion I must dissent.

The main ground advanced for refusing even to take plaintiff's proof is that the law affords the plaintiff adequate

relief for Ward's admitted violation of his contract, in an action for damages. It seems very clear to me that such is not the case. Of course the plaintiff could recover damages for Ward's breach of contract in causing the plaintiff to be deprived of his salary; but that is but a small part of the wrong inflicted upon the plaintiff. This enterprise is a manufacturing business, requiring technical knowledge based upon long practical experience. It has been turned over to men who are wholly inexperienced and unskilled, whose blunders have already resulted in losses. Plaintiff can never get possession of the 1,313 shares issued to him until the profits have repaid Ward's $300,000 investment. Until that time plaintiff must forego eighty per cent of all dividends that may be declared upon his stock. Until that time plaintiff must wait for the transfer to him by Ward of two per cent of Ward's holdings. Until that time, even if the company issued and plaintiff secured the 157 shares remaining unissued, plaintiff could not by any possibility become a majority stockholder, but must leave the control with Ward. It stands admitted that if the plaintiff should continue to manage the business as heretofore, he would be enabled in a very short time to bring about the repayment of the whole of Ward's investment. This would entitle plaintiff to the possession of his 1,313 shares, to all of the dividends thereon instead of only twenty per cent thereof; and to the transfer to him of two per cent of Ward's holdings. It is utterly impossible to prove how long the plaintiff will be deprived of these advantages, or subjected to these disadvantages, in the event that plaintiff continues to be excluded from the practical management of the factory and the same is continued in the hands of wholly inexperienced and unskilled managers. It is impossible to prove with any definiteness how soon the plaintiff would come into the enjoyment of the advantages secured to him by his contract if the terms thereof were lived up to. The stock is that of a private manufacturing company and is not such as would ordinarily have a market value. But if it had a market value, depreciation thereof would afford no true measure of plaintiff's damage, for the plaintiff made his investment of $42,800 in the enterprise and devoted his time and technical knowledge for years thereto presumably with the

expectation of future profits that would accrue to him from the business as it developed under his skilled guidance. None of these elements would be compensated for if plaintiff merely recovered back his investment and damages for the deprivation of his salary. But while these various and clearly apparent elements of damage exist, they are so speculative and uncertain in their nature as to be incapable of ascertainment at law. If they were merely difficult of ascertainment, it would be a different matter, but, being impossible of ascertainment, and the wrong being a continuing one, the right to resort to the equity side of the court seems to me to be clear, so far as this particular ground of objection is concerned.

But it is said, and herein to my mind lies the chief difficulty, that in effect the court is asked to interfere with the internal management of a corporation and, by indirection,, compel its board of directors against their will to continue the plaintiff in the management of the corporation's factory. Ordinarily, of course, no such action would lie. (*Barcus* v. *Cooper*, 184 App. Div. 111.) There are two material considerations, however, which take the case out of the general rule. One is that, although we are dealing with a corporate entity, its entire capital stock is owned by two individuals, in nearly equal proportions, who acquired and who hold the stock by virtue of a mutual agreement making provision for the management of its business and the disposition of the profits, in such manner as to constitute what has frequently been called in this court an " incorporated partnership." No rights of other stockholders are involved, for there are no other stockholders. No obligations of directors to stockholders other than the immediate parties are involved; nor are any rights of creditors concerned. The other material consideration is that the contract between the plaintiff and Ward was in the nature of a joint venture, importing good faith and fiduciary obligations peculiarly cognizable in equity.

It is now well settled that where a court of equity is adjusting the rights of two stockholders owning all the capital stock, it looks at the merits rather than the form, and will disregard the legal fiction that a corporation is a separate entity where justice requires; and, further, that two stockholders owning all the stock of a corporation occupy to each

other substantially the relation of partners. (*Goss & Co.* v. *Goss, No. 2,* 147 App. Div. 698; affd., 207 N. Y. 742.) To the same effect is *Carney* v. *Penn Realty Co.* (174 App. Div. 86), where it was held that two brothers, who were the sole owners of stock of a corporation, occupied substantially the relation of partners, and that such corporate owners are not limited in control by a board of directors, who must necessarily be dummies. (Citing *First National Bank* v. *G. V. B. Mining Co.,* 89 Fed. Rep. 439.) In *Anthony* v. *American Glucose Co.* (146 N. Y. 407) the Court of Appeals said: " We have of late refused to be always and utterly trammelled by the logic derived from corporate existence where it only serves to distort or hide the truth." In *Garrigues Co.* v. *International Agricultural Corporation* (159 App. Div. 877, 880) this court said: " That the doctrine of corporate entity will not be allowed to stand in the way of circumventing fraud or administering justice, has been held in *Goss & Co.* v. *Goss, No. 2* (147 App. Div. 698)." In *Buffalo Loan Co.* v. *Medina Gas Co.* (12 App. Div. 199) the court said: " In view of the fact that Stranahan was practically the owner of the entire capital stock, and the corporation was virtually his private property, and in the light of all the circumstances disclosed in respect to his transactions, the court must not carry too far the legal conception that a corporation is to be regarded as a legal entity, existing separate and apart from the natural persons composing it." In the recent case of *Quaid* v. *Ratkowsky* (183 App. Div. 428, 432; affd., 224 N. Y. 624) this court said: " While the courts of law strictly observe the fiction of corporate entity, there has been for years a growing indisposition to permit corporate entity to be employed either as an instrumentality or as a cloak for fraud or for successful evasion of the law."

We have here a corporate entity, but it is merely the instrumentality through which the plaintiff and Ward, the sole stockholders, agreed with one another to carry on the business of manufacturing cocoa and chocolate; and the directors, other than Ward and the plaintiff, as the complaint shows, are mere dummies of Ward. So that there is no insuperable difficulty in the fiction of corporate entity that will prevent a court of equity from proceeding to the merits and doing justice if the facts warrant it.

That the agreement between Ward and the plaintiff is of the nature of a joint venture or quasi-partnership seems very evident. Each made an agreed contribution to a common fund, deposited with a trust company, for the purpose of acquiring and pooling the entire capital stock of a manufacturing corporation. The purpose of the agreement was to enable the parties to carry on the business of manufacturing cocoa and chocolate. Ward was to have control of the corporation until his investment was repaid with interest and the plaintiff was to control the practical management of the factory, an agreement entirely legal although involving the management of a corporation. (*Lorillard* v. *Clyde*, 86 N. Y. 384, 388.) Profits were not to be divided according to stock holdings, as is ordinarily the case with corporations, *but were to be divided pursuant to the particular provisions of the contract.* Every element of a joint venture existed: joint contribution of capital, joint control with specified qualifications, a common subject-matter, a particular purpose, and an agreed division of profits. Such an agreement is to be enforced upon principles applying to partnership transactions. (*King* v. *Barnes*, 109 N. Y. 267; *Pooley* v. *Driver*, L. R. 5 Ch. Div. 458; *Goss & Co.* v. *Goss, No. 2, supra; Carney* v. *Penn Realty Co., supra.*) In *Marble Co.* v. *Ripley* (10 Wall. 339, 351) the court said: " Any unauthorized attempt by one to oust the other from the position and rights assigned to him by the contract was, therefore, not only a breach of their agreement, but a fraud upon the relation they had assumed to each other. Such a wrong it is the province of a court of equity to prevent. A chancellor will interfere by injunction to restrain one partner from violating the rights of his copartner, even when a dissolution of the partnership is not necessarily contemplated." (See, also, *McCabe* v. *Sinclair*, 66 N. J. Eq. 24.) Lindley on Partnership (8th Eng. ed. p. 362) says: " Indeed, speaking generally, it may be said that nothing is considered as so loudly calling for the interference of the court between partners, as the improper exclusion of one of them by the others from taking part in the management of the partnership business." (See, also, 5 Elliott Contracts, 1045, n. 55.) Particularly should this be true in a case where the exclusion not only violates the

First Department, May, 1919.          [Vol. 187.

fiduciary obligations incident to a joint venture or quasi-partnership, but where it is a direct violation of an explicit provision of the agreement between the parties.

The learned counsel for respondents cites *Drucklieb* v. *Harris* (209 N. Y. 211), where on the organization of a corporation it was agreed that in case of any breach of the agreement by the directors of the company, the defendant would purchase from the plaintiff at the latter's election the shares of stock held by him at the existing book value of the same as shown at the time of such election. It was alleged that the defendant induced the directors to reduce the good will improperly from $20,000 to the nominal value of $1,000 and made other improper reductions in the accounts of the corporation so as to greatly decrease the book value of the shares of stock. The relief demanded was that the individual defendants and the corporation be compelled to restore the books of account to their original condition. A demurrer to the complaint was sustained, but the court specifically based its decision upon the fact that "No breach of the agreement by Harris or the corporation is alleged." (p. 214.) While the court said that it did not think the agreement to continue the plaintiff as a director and officer of the corporation, although entirely legal in a case where the corporation had only two stockholders, was binding on the corporation, that question was not decided, for the court said it was not presented by the case. The court said: "The contract between Harris and the plaintiff makes no provision as to the method in which the books shall be kept. Therefore, if this action be maintained, it must rest on the proposition that when one stockholder contracts with another stockholder of a corporation for the purchase and sale of shares of stock at the book value as shown on the accounts of the corporation, such a contract requires or justifies the intervention of a court of equity in the management and control of the books of account of the corporation." The court held that it did not require or justify intervention, but it does not follow at all that the court would have so held if the case had involved, as here, the violation of a provision of the contract between the parties.

Following the intimation in the *Drucklieb* case that the

contract to continue the plaintiff as director and officer was not binding on the corporation, the learned counsel for the respondents insists that the contract between the plaintiff and Ward was not binding on the Ideal Company. It is contended that there is no allegation that the corporation adopted the contract. But the complaint alleges: " That after said stock had been purchased as aforesaid the plaintiff duly undertook the management of the said Ideal Cocoa & Chocolate Company as provided in said agreement, and has continued for over seven years to manage the same." Construing this allegation in support of the pleading, and interpreting it liberally as we are required to do, this shows that the corporation adopted the provision in the contract that plaintiff should be its factory manager. It is said that there could be no adoption without knowledge and there is no specific allegation of knowledge. But the knowledge of the corporation clearly appears. Its only stockholders were the plaintiff and Ward, parties to the agreement. The corporation knew of the agreement when all of its stockholders were parties to the agreement. The plaintiff was its president when he undertook the management " as provided in said agreement." Each of the other directors was a dummy and *alter ego* of Ward, and Ward, who was in full control of the corporation, had full knowledge of the agreement when the plaintiff undertook the management " as provided in said agreement." Under such circumstances it is pretty far fetched to infer, in order to overthrow this pleading, that the corporation had no knowledge of the agreement when the plaintiff was made manager and continued as such for a period of years at a salary of $10,000 per annum, just as provided in the agreement.

But even if it be held that the complaint does not sufficiently show adoption of the agreement by the corporation, the agreement is enforcible against Ward and, through his dummies, against the corporation, for this is one of those cases where the court should go behind the corporate entity and refuse to permit it to be employed as a cloak for fraud and the successful evasion of the fiduciary obligations of a contract essentially of the nature of a partnership. The agreement is not one that can be said to be void as against public policy, as in *Manson* v. *Curtis* (223 N. Y. 313), but is entirely legal and

the kind held to be legal in *Lorillard* v. *Clyde* (*supra*) and in *Drucklieb* v. *Harris* (*supra*). The purpose of ousting plaintiff from the practical management of the factory and installing in his place wholly inexperienced and incompetent persons being to postpone indefinitely the time when plaintiff will get possession of his stock and enjoy the dividends therefrom, and to continue Ward indefinitely in the control of the business, thus in effect appropriating the plaintiff's investment of $42,800, which constitutes a fraud upon the plaintiff and a violation of fiduciary obligations, the case is plainly one calling for the intervention of a court of equity. At any rate, it is not an " ' absolute, certain and clear proposition that, taking the charges in the bill to be true, the bill would be dismissed at the hearing.' "

It was suggested from the bench on the argument that the court had no jurisdiction because the defendant corporation is a foreign corporation. The point was not advanced by the learned counsel for the respondents, and I do not think that it was because he overlooked the point. This action is not directed against a foreign corporation. The corporation and its directors are proper parties defendant (*King* v. *Barnes*, *supra*), but the action is based upon a New York contract between the plaintiff and Ward, and is directed primarily against Ward to enjoin *him* from violating his contract and, by way of mandatory injunction, to compel *him*, through his absolute control of the corporation, to reinstate the plaintiff as factory manager. If the corporate entity may be disregarded when it is a mere instrumentality for the conduct of a practical partnership, upon the principles above discussed, it can make no difference that the parties have chosen to locate the fiction of corporate entity in another State. Moreover, as the corporation is engaged in business in this State, the court would possess jurisdiction, even though on the trial it should decide as a matter of policy to decline jurisdiction.

The plaintiff seeks other and further relief to which it does not appear that he is entitled. Without going into the matter in any detail, it may be said that the plaintiff alleges that under the contract he was to have forty-nine per cent and Ward fifty-one per cent of the total authorized capital until

Ward's investment was returned with interest, whereupon Ward was to transfer two per cent of his holdings to the plaintiff, thereby vesting control in the plaintiff. Accordingly, plaintiff demands that Ward cause the corporation to issue a sufficient number of additional shares out of the 157 remaining unissued and transfer the same to the plaintiff, so that the plaintiff will have forty-nine per cent of the stock and thus be in a position, when Ward's investment is returned, to have the control of the corporation. If such was the intent of the contract, it was not so provided, and before the plaintiff would be entitled to any such relief the contract would need reformation.

For these reasons I am of the opinion that the judgment and orders sustaining the demurrers should be reversed, with costs, and the motion to sustain the demurrers denied, with ten dollars costs, with the usual leave to withdraw the demurrers and answer upon payment of said costs.

MERRELL, J., concurred.

Judgment and orders affirmed, with costs.